CHARLES L. & BILLIE W. ETHERIDGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Etheridge v. Commissioner
Docket No. 1027-76.
United States Tax Court
T.C. Memo 1977-175; 1977 Tax Ct. Memo LEXIS 269; 36 T.C.M. (CCH) 724; T.C.M. (RIA) 770175; June 8, 1977, Filed Charles L. Etheridge and Billie W. Etheridge, pro se. Harold Friedman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: 1972
$1,537.61
1973
$1,446.43
The only issue for decision is whether petitioners are entitled to deduct as a charitable contribution under section 170, [1]/ amounts representing the value of personal services they rendered to "Project Upward Bound." *270 FINDINGS OF FACT Petitioners Charles L. and Billie W. Etheridge, husband and wife, were legal residents of El Paso, Texas, at the time their petition was filed. Petitioners filed joint Federal income tax returns for 1972 and 1973 with the Director, Internal Revenue Service Center, Austin, Texas. During the years in controversy, petitioners were professors in the College of Liberal Arts at the University of Texas, El Paso (UTEP). They volunteered their services as consultants to "Project Upward Bound" (hereinafter the project or the program), a federally-supported program administered by UTEP through grants received from the Office of Economic Opportunity (OEO). Under the terms of the OEO grant, 10 percent of the necessary project funding was required to be furnished by the administering university. This 10-percent funding requirement could be satisfied by contributed voluntary services. The primary function and goal of the project was to aid educationally handicapped students by attempting to provide them with the basic skills needed to enable them to succeed at the college level of education. The program was administered to promising high school juniors and seniors *271 who were selected for participation in the program. The program participants met with instructors 3 Saturdays each month for a total of 27 Saturdays during the school term. Petitioners performed several types of services. They provided classroom instruction during the regular Saturday morning meetings, usually for 3 hours each meeting. Petitioners were compensated for their hours of actual classroom instruction, and these services are not in dispute. In addition, however, they met during each week with tutors employed under the program to discuss the week's work requirements and necessary revisions in the training program. They spent 1 to 3 hours each day outside the classroom with those tutors and working with individual students. In addition, petitioners devoted time each week to researching and outlining lesson plans. Petitioners spent approximately 9 hours per week advising tutors, counseling students, and researching lesson plans. Petitioners were not compensated for their out-of-the-classroom hours of work. On their joint Federal income tax returns for 1972 and 1973, petitioners deducted $5,475 each year as charitable contributions to the project, representing 219 *272 contributed hours of annual service valued at $25 per hour. Respondent disallowed these claimed deductions, determining that contributions of services do not qualify as charitable contribution deductions under section 170. OPINION Section 170(a)(1) allows a deduction for "any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year." Subsection (c) of section 170 defines a charitable contribution as a "contribution or gift to or for the use of" organizations described therein. However, under section 1.170A-1(g), Income Tax Regs., no deduction is allowable for contributions of services. See Tate v. Commissioner,59 T.C. 543, 549 (1973); cf. Smith v. Commissioner,60 T.C. 988, 992 (1973). Petitioners are aware of this regulation, and they concede that the deduction which they claim represents the estimated value of their services. However, petitioners attempt to distinguish the services they rendered to the project from those specifically disallowed by section 1.170A-1(g), Income Tax Regs. Petitioners claim that their services were purely professional in nature and are therefore different from *273 the type of voluntary services ordinarily rendered to charitable organizations. Petitioners maintain that, in permitting UTEP to meet its 10-percent funding requirement for the project by providing professional teaching services, Congress implicitly recognized such a distinction between professional services and ordinary voluntary services. We must disagree. The regulation cited above is quite clear in disallowing charitable contribution deductions for services. It contains no qualifying language or distinctions of any kind which would lend support to petitioners' argument. Had petitioners been compensated in cash for their voluntary services and then contributed the cash to the project, they might have been entitled to deductions for the amount of the cash, but they would have had offsetting additional taxable income. The regulation is designed to deny deductions for the value of services where such value is not included in taxable income. While petitioners are to be commended for contributing their valuable services in the cause of providing better education for the beneficiaries of the project, the Internal Revenue Code simply does not allow the coveted deduction. Performing *274 their voluntary services did not constitute a "payment" which was "made within the taxable year." Accordingly, we must sustain respondent's disallowance of the disputed charitable contribution deductions. At the termination of the trial of this case, respondent conceded an allowance of $200 in both 1972 and 1973 for materials contributed by petitioners to the project. To reflect this concession and others made by petitioners, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.